### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 07-136 (HKK) |
| | : | |
| ABRAHAM KHATIB, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S REQUEST FOR PREVENTIVE DETENTION
### AND FOR A MENTAL HEALTH EVALUATION

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court 1) hold the defendant without bond, and 2) order a mental health evaluation and (if necessary and recommended) treatment, under 18 U.S.C. §4241(a). Based on the record and new information as set forth herein, the government submits that there is no condition nor combination of conditions for the defendant's release can reasonably assure the safety of the community or the victim.  *See* 18 U.S.C. §3142.

### BACKGROUND

The defendant is charged with threatening to kill the Israeli Ambassador to the United States, based on telephone calls he is alleged to have made on April 13, 2007, to the Israeli Embassy in Washington, D.C., from his home in Wilmington, N.C. The defendant's telephone records (obtained since the time he first appeared before the U.S. Magistrate in the Eastern District of North Carolina) reflect that the same day that the threats were made to the Ambassador, the defendant also made calls to the

-2-

U.S. Capitol and to the Central Intelligence Agency (CIA).[1]

In late 2006 and the first few months of 2007, the defendant made many telephone calls to Washington, D.C., as more specifically detailed in the affidavit in support of the criminal complaint filed by the United States Secret Service, in this case. Those calls included calls to both the Israeli and the Russian embassies, complaining of the treatment of Iranians and referring at various times to "demons." *See* Affidavit in support of Criminal Complaint, United States v. Abraham Khatib, 07-180-M-01. As also noted in the Affidavit, the investigation conducted by the Secret Service revealed that the defendant has undergone mental health treatment for Schizophrenia, for which he is required to take medication, and that he is not reliably compliant with his medications. *Id.*

On May 9, 2007, the defendant made his initial appearance before U.S. Magistrate Judge E. S. Swearingen, in Wilmington, North Carolina, and was released on $50,000 unsecured bond. *See* 07-MJ-01087 (SES) (E.D.N.C.). Since that time, more information has become available to the government and the defendant has been

---

[1] The government can provide to the Court and defense counsel (once identified), the records received from Bell South, pertaining to the defendant's residential telephone service. For April 13, 2007, those records reflect telephone calls to the Israeli Embassy at 1:30 p.m., 2:06 p.m., and 5:48 p.m. The United States Capitol switchboard received calls at 7:02 p.m., 7:10 p.m., and 7:37 p.m. The CIA was contacted at 2:10 p.m. (twice) and 2:17 p.m.

-3-

indicted in this case.  Most significant is the defendant's
criminal history and his 1984 arrest for attempted murder, in
Houston, Texas.  In that case, the defendant approached a friend
in a convenience store and following a verbal altercation, left
and returned with a 12-gauge shotgun, continuing the altercation
at gunpoint, and angrily shooting the friend in the abdomen,
before a half dozen witnesses.  The defendant admitted that he
shot his friend, and he was charged with attempted murder (after
which he threatened individuals who he claimed had gotten him
into trouble).  Ultimately he was found not guilty by reason of
insanity.

The facts of the 1984 case cause grave concern, and also
because more recently, the defendant continued to suffer from
dangerous mental distress.  In September of 2006, at a time when
the defendant was making calls to the Russian Embassy, the Secret
Service contacted the defendant's wife and was told of the
defendant's history of Schizophrenia.  At that time, the
defendant was refusing to take prescribed medications, and his
family sought judicial intervention.  Mrs. Khatib provided to the
Secret Service a copy of her application for an Involuntary
Commitment Order, dated September 18, 2006, in which she alleged
that the defendant was "mentally ill and dangerous to self or
others or mentally ill and in need of treatment in order to
prevent further disability or deterioration that would

-4-

predictably result in dangerousness." The Secret Service also obtained a copy of the findings and custody order of involuntary commitment, also dated September 18, 2006.

## 1. **Preventive Detention**

At the initial appearance on May 9, 2007, in the United States District Court for the Eastern District of North Carolina, the defendant waived his preliminary hearing and was released on an unsecured bond of $50,000, with a curfew to be enforced with electronic monitoring. The defendant was not detained, despite his clear and unambiguous death threat to the Israeli Ambassador and his history of mental illness. The government challenges this decision and requests an opportunity to present the new information regarding the defendant's prior assaultive behavior in Houston, Texas. It is the government's position that this prior history, the prior finding of insanity, and the more recent mental health distress suggest that at a minimum, this Court should order that a psychiatric evaluation be performed, to ensure that the defendant is not now suffering from a dangerous mental illness.

First, the defendant's status has changed. An indictment has since been returned, charging the defendant with making interstate threatening communications and threats to a foreign official. Second, the defendant's mental state should be evaluated further, in considering whether to continue his current

-5-

conditions of release, particularly since the indictment now assures that the defendant's presence will be needed in Washington, D.C., closer to his victim, and his travel here is completely unsupervised. *See* 18 U.S.C. §3142(g) ("The judicial officer shall . . . take into account the available information concerning . . . the person's . . . mental condition").

Here, particularly where the defendant is dangerous and perhaps mentally incompetent, it is the government's view that a money bond will not control the defendant's violent, dangerous, or disruptive behavior. The framers of the 1984 Bail Reform Act drew a distinction between factors relating to risk of flight and those involving community safety. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3207.

The government requests, therefore, that this Court review the decision to permit the posting a money bond, and instead Order that the defendant be held without bond, pending trial, because the safety of the community and the victim cannot be adequately assured.

-6-

## 2.  __Competency Evaluation__

Pursuant to 18 U.S.C. §4241(a), "At any time after the
commencement of a prosecution for an offense and prior to the
sentencing of the defendant, the defendant or the attorney for
the Government may file a motion for a hearing to determine the
mental competency of the defendant." *Id*.

Upon such a motion, and in preparation for a hearing, "the
court may order that a psychiatric or psychological examination
of the defendant be conducted, and that a psychiatric or
psychological report be filed with the court, pursuant to the
provisions of section 4247 (b) and (c)." *See* 18 U.S.C. 4241(b).

When the defendant appears before the Court on June 7, 2007,
this Court may order that a preliminary competency screening be
performed, to further inform the Court about the defendant's
mental competence and the government's request for a more
thorough evaluation.  The government believes that a preliminary
screening will provide insight into the defendant's history of
violence, medication and compliance with treatment, which may
assist the Court in determining whether, pursuant to 18 U.S.C.
§4247, the defendant should be committed to the custody of the
Bureau of Prisons, for transfer to an appropriate Federal Medical
Center, for a complete competency evaluation and treatment.

-7-

## **Conclusion**

WHEREFORE, the government respectfully requests that this Court order that the defendant be held without bond pending trial, and that the Court issue the attached Order committing the defendant to the Bureau of Prisons for a competency evaluation.

Respectfully Submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar Number 498610


By:                    /s/
      _____
      BARBARA E. KITTAY
      D.C. Bar #414216
      Assistant U.S. Attorney
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 514-6940
      Barbara.Kittay@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :     Criminal No. 07-136 (HHK)
                                  :
          v.                      :
                                  :
ABRAHAM KHATIB,                   :
                                  :
          Defendant.              :
_____ :

**O R D E R**

This matter comes before the Court upon the application of
the defendant to determine the competency of the defendant,
pursuant to Title 18, United States Code, §4241(a).  Upon
consideration of the positions and arguments of both parties, and
the record of this matter, and for good cause shown, it is hereby

ORDERED that the defendant is committed to the custody of
the Attorney General for a reasonable period, not to exceed
thirty (30) days, for placement in a suitable facility for the
purpose of a mental health evaluation.  Unless impracticable, the
psychiatric or psychological examination shall be conducted in
the suitable facility closest to the court.  The director of the
facility may apply for a reasonable extension, not to exceed
fifteen (15) days, upon a showing of good cause that such
additional time is necessary to observe and evaluate the
defendant and to issue a report.

SO ORDERED, this _____ day of June, 2007.


_____
UNITED STATES DISTRICT COURT JUDGE